STANLEY R. PALOWSKY, III, ET AL.

VERSUS

ALLYSON CAMPBELL

NO. 21-C-279

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
FOURTH JUDICIAL DISTRICT COURT
PARISH OF OUACHITA, STATE OF LOUISIANA
NO. 15-2179
HONORABLE JEROME J. BARBERA, III, JUDGE AD HOC PRESIDING

August 26, 2021

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Stephen J. Windhorst

**WRIT DENIED**
  **JGG**
  **FHW**
  **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Nancy J. Vega
Chief Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RELATOR,
STANLEY R. PALOWSKY, III, INDIVIDUALLY AND ON BEHALF OF
ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC.
        Joseph R. Ward, Jr.
        Sedric E. Banks

COUNSEL FOR DEFENDANT/RESPONDENT,
ALLYSON CAMPBELL
        Jeffrey M. Landry
        Lawrence W. Pettiette
        Brian E. Crawford

COUNSEL FOR DEFENDANT/RESPONDENT,
JUDGE CARL V. SHARP, JUDGE H. STEPHENS WINTERS,
JUDGE BENJAMIN JONES, JUDGE J. WILSON RAMBO, AND
JUDGE FREDERIC C. AMMAN
        Jon K. Guice
        Justin N. Myers

**GRAVOIS, J.**

Plaintiff/relator, Stanley R. Palowsky, III,[1] seeks this Court's supervisory review of an Order of the trial court dated September 18, 2020 which ruled on discovery matters and granted a limited Protective Order in favor of defendants/respondents.  For the following reasons, we find no error in the trial court's interpretation of the statute at issue (La. C.E. art. 519), and further find no abuse of the trial court's broad discretion in its rulings on the discovery matters at issue.  We accordingly deny the writ application.

## BACKGROUND AND PROCEDURAL HISTORY

This matter has a lengthy procedural history.  On July 22, 2015, plaintiff-relator, Stanley R. Palowsky, III, filed this suit (Docket No. 15-2179) in the Fourth Judicial District Court, Parish of Ouachita, against Allyson Campbell, a law clerk employed by the Fourth Judicial District Court, alleging among other things that Ms. Campbell committed certain acts in the course of her employment that damaged relator in a previous lawsuit that was pending in the same court: *Palowsky v. Cork*, Docket No. 13-2059, Fourth Judicial District Court, Parish of Ouachita (the underlying shareholder derivative/racketeering suit).  In his first supplemental, amended, and restated petition for damages filed on July 31, 2015, plaintiff alleged that he suffered damages as a result of Ms. Campbell's "fraud, conspiracy to commit fraud, abuse of process, destruction or concealment of public records, intentional infliction of emotional distress, and violation of his rights under the Louisiana Constitution to due process and access to courts."[2]  In his first

---

[1] Mr. Palowsky filed this suit "individually and as a 50-percent shareholder and director of Alternative Environmental Solutions, Inc."  For the sake of simplicity, the terms "relator" and "plaintiff" as used herein shall refer jointly to Mr. Palowsky and to Alternative Environmental Solutions, Inc., to the extent of its interest herein.

[2] More specifically, plaintiff alleged that Ms. Campbell "maliciously and intentionally harmed [plaintiff] and willfully violated his constitutionally-protected rights to both due process and access to courts in *Palowsky v. Cork* when she spoliated, concealed, removed, destroyed, shredded, withheld, and/or improperly 'handled' court documents such as memoranda of law, orders, pleadings, sealed court documents, and chamber copies of pleadings filed with the clerk

supplemental, amended, and restated petition for damages, plaintiff also added as defendants several current or former judges presiding in the Fourth Judicial District Court, Parish of Ouachita (Judge H. Stephens Winters, Judge Carl V. Sharp, Judge Benjamin Jones, Judge J. Wilson Rambo, and Judge Frederic C. Amman, hereinafter "the defendant judges"), alleging that they were aware of Ms. Campbell's actions, failed to control her actions, and conspired to conceal her actions.[3] After the entire bench of the Fourth Judicial District Court recused itself, the Louisiana Supreme Court appointed Judge Jerome J. Barbera, III, as judge *ad hoc*, to preside over the case.

In response to the first supplemental, amended, and restated petition, defendant Ms. Campbell filed, among other things, an exception of no cause of action based on judicial immunity and a motion to strike certain allegations found in specifically enumerated paragraphs of the petition as redundant, immaterial, impertinent, and/or scandalous. The defendant judges also filed, among other things, an exception of no cause of action, also arguing that judicial immunity applied to render them immune from suit, as well as a similar motion to strike. In due course, the motions to strike were granted, striking 46 specifically enumerated paragraphs and 3 subparagraphs from plaintiff's petition. Further, the exceptions of no cause of action were granted, on the basis of absolute judicial immunity, dismissing plaintiff's suit against Ms. Campbell and the defendant judges with prejudice.

Plaintiff appealed to the Second Circuit Court of Appeal. After briefing, but prior to oral argument, seven of the nine judges of that court recused themselves,

---

and hand-delivered to Defendant [Judge] Rambo's office," and "maliciously withheld and concealed documents and pleadings in the trial court as well as from the record that was sent to the Second Circuit Court of Appeal for its review of an application for supervisory writs filed by Cork." (Footnotes omitted.)

[3] More specifically, plaintiff alleged that the defendant judges "aid[ed] and abett[ed] [Ms.] Campbell by allowing her free rein to do as she pleased and then conspir[ed] to conceal [Ms.] Campbell's acts which compounded the adverse effects of her acts on [plaintiff]."

preventing the composition of a three-judge appellate panel. In due course, the Supreme Court transferred the appeal to the First Circuit Court of Appeal. On appeal, a divided *en banc* panel of the First Circuit reversed the motions to strike in part, affirming the striking of the allegations contained in 26 specifically enumerated paragraphs and 2 specifically enumerated subparagraphs from plaintiff's petition.[4] The court also reversed the granting of the exception of no cause of action as to the law clerk, but affirmed the granting of the exception of no cause of action as to the defendant judges, finding they were entitled to absolute judicial immunity from suit. *Palowsky v. Campbell*, 16-1221 (La. App. 1 Cir. 4/11/18), 249 So.3d 945, 959-60.

In response to a writ of certiorari taken by plaintiff to the Louisiana Supreme Court, in a short *per curiam* opinion, which included several concurring and dissenting opinions, the court reversed the judgment of the First Circuit in part, insofar as it dismissed plaintiff's claims against the defendant judges with prejudice. The high court held that "[c]onsidering the highly unusual and specific facts of this case, the court of appeal erred in finding the judges were entitled to absolute judicial immunity. Accepting the facts as alleged in the petition as true for purposes of the exception of no cause of action, we find plaintiff's allegations regarding the judges' supervision and investigation of the law clerk's activities arise in the context of the judges' administrative functions, rather than in the course of their judicial or adjudicative capacities." *Palowsky v. Campbell*, 18-1105 (La. 6/26/19), 285 So.3d 466, 467, *reh'g denied*, 18-1105 (La. 9/6/19), 278 So.3d 358, and *cert. denied sub nom. Winters v. Palowsky*, 140 S.Ct. 2570, 206 L.Ed.2d

---

[4] The First Circuit reversed in part the December 11, 2015 judgment of the trial court insofar as it granted the motions to strike by the judges and by Ms. Campbell with regard to Paragraphs 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 52C, 58, 61, 63, 68, 69, 71, 80, and 81 of plaintiff's amended petition, and affirmed the judgment striking Paragraphs 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 39, 42, 52A, 52E, 59, 62, 64, 65, 66, 67, 70, 79, and 82 of the amended petition.

499 (2020). In all other respects, the high court found no error in the court of appeal's judgment and affirmed the remaining portions of that judgment. Thus, the First Circuit's judgment regarding the stricken paragraphs is now final. The matter was remanded to the Fourth Judicial District Court for further proceedings.

Upon remand, relator filed a "Motion to Fix and Notice Depositions of Defendant Judges." The motion was opposed by the judges and the law clerk. After considering the oppositions to the motion filed by the defendants, the trial court "converted" the matter to a "*Limine* Motion to consider a Protective Order and to hold an Article 519 [Code of Evidence] hearing," over plaintiff's objections. The motion was heard on August 21, 2020. A judgment which granted the particular relief described below was signed on September 18, 2020, of which relator now seeks review.

Relator thereupon filed in the trial court a notice of intention to apply for a supervisory writ to the First Circuit Court of Appeal and requested a return date, which was granted on September 18, 2020, giving relator until October 19, 2020 within which to file the writ application. The writ application was filed in the First Circuit on October 19, 2020. On October 29, 2020, the First Circuit transferred the writ to the Second Circuit, finding that it had no jurisdiction over a writ application arising out of Ouachita Parish. On February 5, 2021, the Second Circuit set the writ "to docket" for preparation of the record and a briefing schedule. The record was lodged in the Second Circuit on April 21, 2021. However, on May 26, 2021, the Supreme Court issued an Order transferring the writ application from the Second Circuit to this Court, apparently after enough judges on the Second Circuit recused themselves from the matter so as to prevent convening a three-judge panel

to hear the writ application.[5]  The writ application, including the record, was filed with this Court on June 2, 2021.[6]

The trial court's September 18, 2020 Order allowed the depositions of the judges and Ms. Campbell to go forward with the following qualifications.  First, the trial court found that La. C.E. art. 519 applied to the judges being deposed in this suit, and held that as per that Article, plaintiff's counsel would be required to provide timely written notice to each judge setting forth, with reasonable particularity, the designated areas of inquiry upon which that judge is to be deposed, at least 10 days prior to that judge's deposition.

Further, within its September 18, 2020 Order, the court granted a Protective Order, declaring that no discovery would be allowed related to the subject matter contained in the allegations that were stricken from plaintiff's petition.  The Protective Order further protected from discovery the personnel files of Ms. Campbell and the proceedings of any judges' meetings, except to the extent that the personnel file or the meeting documents contain information related to plaintiff's allegations of Ms. Campbell's having destroyed official documents or concerns about her alleged wrong doings in relation to her handling of pleadings filed with the Fourth Judicial District Court.  Subject to the foregoing, the parties were allowed to conduct discovery in accordance with the Louisiana Code of Civil Procedure.

The Protective Order further limited the depositions' attendees to only those persons who are involved in the case and who have a legitimate need to be present,

---

[5] According to filings in this Court, six judges recused themselves individually on November 18, 2020, and a seventh judge recused on January 12, 2021.

[6] On June 8, 2021, counsel for the defendant judges filed a Motion to Dismiss the writ application, arguing that the writ was untimely because relator initially filed it in the First Circuit, a court with no jurisdiction, and thus the transfer of the writ to the Second Circuit on October 29, 2020, more than 30 days after the ruling at issue, made the writ untimely filed. Counsel for Ms. Campbell also raised the timeliness issue in her Opposition filed in this Court on June 7, 2021.  By Order dated this date, this Court denied the Motion to Dismiss.

such as the attorneys for the parties, their paralegals, and the court reporter. Finally, the Protective Order protected the transcripts of the depositions, documents produced through discovery requests in this case, and videotapes of the depositions, from disclosure or release to the general public, with the proviso that this protection would not restrict the ability of the parties to file legitimate exhibits to pleadings which are needed in the proceedings in this case.

Herein, relator argues the following assignments of error:

1. The trial court abused its discretion in ruling that La. C.E. art. 519 is applicable to the depositions of the defendant judges, and further, that under said Article, plaintiff must give each defendant judge notice "with reasonable particularity" of the designated areas of deposition inquiry 10 days prior to his deposition.

2. The trial court abused its discretion in ruling that all deposition videos and transcripts and all "documents produced through discovery requests" are "protected and should not be released to the general public," especially given that this ruling went beyond the relief requested by defendants.

3. The trial court abused its discretion in ruling that the only persons allowed to attend depositions are those who are "involved in this case and have a legitimate need to be present, such as the attorneys for the parties, their paralegals, and the court reporter."

4. The trial court abused its discretion in ruling that the personnel file of defendant Ms. Campbell and documents related to Fourth Judicial District Court judges' meetings are protected from discovery, unless the personnel file or meeting documents contain information related to plaintiff's allegations of Ms. Campbell's destruction of court documents or mishandling of pleadings filed at the Fourth Judicial District Court.

## STANDARD OF REVIEW

The interpretation of a statute is a question of law and is reviewed under a *de novo* standard of review. *Gloria's Ranch, L.L.C. v. Tauren Expl., Inc.*, 17-1518 (La. 6/27/18), 252 So.3d 431, 444-45.

The trial court has broad discretion in regulating pretrial discovery, and its decision will not be disturbed on appeal absent a clear abuse of that discretion. *H. D. Graphics, L.L.C. v. It's Permanent, L.L.C.*, 49,405 (La. App. 2 Cir. 10/1/14),

150 So.3d 936, 941, citing *Bell v. Treasure Chest Casino, L.L.C.*, 06-1538 (La. 2/22/07), 950 So.2d 654.

La. C.C.P. art. 1426 provides that a party or other person from whom discovery is sought may obtain a protective order to protect the person from annoyance, embarrassment, oppression, or undue burden. Such a protective order may be fashioned to preserve the confidentiality of the information disclosed. The granting or not of a protective order, and the extent of protection, are within the discretion of the trial court; and the court of appeal will not ordinarily modify or reverse the trial court in such matters absent an abuse of the trial court's discretion. *Cerre v. Cerre*, 96-2328 (La. App. 4 Cir. 1/15/97), 687 So.2d 601, 603.

## FIRST ASSIGNMENT OF ERROR

Relator first argues herein that the trial court interpreted La. C.E. art. 519 too broadly, and that it should not apply to suits where judges are parties. He also argues that the requirement that he give the judges "notice with reasonable particularity" of the designated areas of deposition inquiry is prejudicial to his ability to prosecute his case.

This Court could find no jurisprudence interpreting Article 519. The trial court noted the same at the hearing. Accordingly, the following guidelines pertaining to interpretation of legislation are applicable, as discussed previously by this Court:

> Legislation is the solemn expression of legislative will and, therefore, the interpretation of legislation is primarily the search for the legislative intent. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent. La. Civ. Code art. 9. However, if a statute is ambiguous or susceptible of more than one reasonable interpretation, statutory construction is necessary.
>
> The function of statutory interpretation and the construction to be given legislative acts rests with the judicial branch of government. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the

purpose of the law. La. Civ. Code art. 10. Louisiana Rev. Stat. § 1:3 also provides that, when interpreting the revised statutes, courts shall read and construe statutory words and phrases in their context and in accordance with the common and approved usage of the language. See also La. Code Civ. Proc. art. 5053.

Accordingly, the starting point for the interpretation of any statute is the language of the statute itself, while being mindful that the paramount consideration for statutory interpretation is always the ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. Therefore, when the apparent meaning of the statute appears doubtful or the language can reasonably be interpreted in more than one manner, courts must search deeper to discover the legislative intent. (Internal citations omitted.)

*Oubre v. St. Charles Par. Sheriff's Off.*, 16-409 (La. App. 5 Cir. 12/14/16), 209

So.3d 302, 306-07, citing *BellSouth Telcoms., Inc. v. Bennett Motor Express,*

*L.L.C.*, 13-438 (La. App. 5 Cir. 12/12/13), 131 So.3d 236, 242-43.

La. C.E. art. 519 provides:

A. General rule. Neither a subpoena nor a court order shall be issued to a judge or his representative to appear or testify in any civil, criminal, or juvenile proceeding, including pretrial discovery or an administrative hearing, unless, after a contradictory hearing, it has been determined that the information sought is not protected from disclosure by the judicial deliberative process privilege,[7] and all of the following:

(1) The information sought is essential to the case of the party seeking the information and is not merely peripheral, cumulative, or speculative.

(2) The purpose of seeking the information is not to harass the judge, nor for the mere purpose of seeking recusal of the judge.

(3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.

(4) There is no practical alternative means of obtaining the information.

B. Waiver. Failure to object timely to a party's non-compliance with the provisions of this Article constitutes a waiver of the procedural protections of this Article, but does not constitute a waiver of any privilege.

---

[7] We note, as explained above, that the matter of whether the defendant judges could invoke judicial immunity in this suit based on the judicial deliberative process privilege was previously decided by the Supreme Court against the judges.

C. The procedural provisions of and the protections afforded by Paragraph A of this Article shall extend to any judge of any court provided for by Article V of the Constitution of Louisiana and to any commissioner or special master of such court.

The trial court's September 18, 2020 Order was issued following a contradictory hearing on the applicability of Article 519. In its oral reasons for judgment given at the hearing, the trial court, applying the rules of statutory interpretation, found that the language in the Article was clear. The court found that it applies "in any civil proceeding," whether or not the judge is a party to the proceeding or merely a witness. Upon *de novo* review, we find no error in the trial court's interpretation of the statute. "When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent." Louisiana Civ. Code art. 9. We find that the trial court utilized the correct analysis in interpreting Article 519. The trial court's interpretation of Article 519 does not lead to absurd results. The Article's clear language places no limits or qualifications on its terms, such as exempting a judge who is a party to the suit, from the provisions of the Article, as relator argues the Article should be interpreted. The legislature could have excluded judges who are parties to suits from the effects of the Article, but instead chose not to do so.

Paragraph A of the Article clearly applies to judges called "to appear or testify in <u>any</u> civil, criminal, or juvenile proceeding, including pretrial discovery or an administrative hearing, unless, after a contradictory hearing, it is determined that the information sought is not protected from disclosure by the judicial deliberative process privilege," and further if the four parameters listed therein are met. (Emphasis added.) Likewise, Paragraph C of the Article broadly extends the procedural provisions and protections afforded by Paragraph A of the Article to "<u>any</u> judge of any court … ." (Emphasis added.) In the instant matter, the trial

21-C-279                                    9

court properly conducted the required contradictory hearing and properly determined that the discovery depositions requested by plaintiff could properly go forward subject to the requirements imposed by Article 519 and the limitations provided for in the subject Protective Order. Contrary to relator's arguments in the writ application, the provisions of the Order do not provide a "back door" to the invocation of judicial immunity.

The Order's provision that the judges be given notice of the designated areas of inquiry, with reasonable particularity, generally tracks the language contained in paragraph B(3) of the Article.[8] Relator also argues that because the Code of Civil Procedure does not require one party to subpoena another party to appear for a deposition, Article 519 has no application to the instant case. We find no merit to relator's argument in this regard, based upon the clear language of Paragraphs A and C of the Article, as discussed above. Further, Article 519, which is more the specific law applying only to judges who are called to appear, testify, or provide pretrial discovery in any civil case, applies under the facts of this case over the more general articles on discovery in the Code of Civil Procedure that apply to witnesses (non-judges) in general.

While relator argues that these protections hamper his ability to prosecute his case, his arguments in this regard fall woefully short. Neither Article 519's clear language nor the terms of the Order purport to deny relator reasonable inquiry into the specific remaining allegations of his suit. At the hearing, the trial court specifically stated that there was no restraint on discovery as long as discovery was restricted to the remaining allegations of the petition while inside the bounds of the

_____

[8] Relator's argument in brief that the trial court's Order forces him to "go through the time and expense of proving his right to obtain deposition testimony from Defendant Judges" is inaccurate. No party at the hearing disputed relator's right to depose the defendant judges. Further, the trial judge stopped short of requiring relator to issue subpoenas to the defendant judges for the depositions, noting the time and expense involved therein, and holding that the aforementioned written notice served on the defendant judges at least 10 days prior to the depositions would suffice.

Code of Civil Procedure. Further, the Order's provision requiring that the judges be given timely notice of the depositions' areas of inquiry, with reasonable particularity, is reasonable given the fact that numerous particular allegations have been stricken from plaintiff's petition, and that discovery has been limited only to the allegations that have not been stricken.[9] The Order's provisions thus safeguard that the trial and appellate courts' prior judgments in this regard will be followed, and help insure the rights of every party to a fair trial.

In light of the above, we find no merit to relator's arguments that Article 519 does not apply to these proceedings or that the provisions of the Order in this regard are unreasonable.

### SECOND ASSIGNMENT OF ERROR

Next, relator argues that the trial court abused its discretion in ruling that all deposition videos and transcripts and all "documents produced through discovery requests" are "protected and should not be released to the general public," especially given that this ruling went beyond the relief requested by defendants.

As previously stated, the trial court has broad discretion in regulating pretrial discovery, and its decision will not be disturbed on appeal absent a clear abuse of that discretion. *H. D. Graphics, LLC v. It's Permanent, LLC*, *supra*. La. C.C.P. art. 1426(A) provides that a party or other person from whom discovery is sought may obtain a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This statute further provides "[t]hat certain matters be not inquired into, or that the scope of the discovery be limited to certain matters" (paragraph (A)(4)), and "[t]hat discovery be conducted with no one present except persons designated by the court"

---

[9] Respondents also point out in opposition to the writ that the designation of "areas of inquiry" is substantially similar to the process for deposing a corporate representative under La. C.C.P. art. 1442.

(paragraph (A)(5)). Such a protective order may also be fashioned to preserve the confidentiality of the information disclosed. *Cerre v. Cerre*, *supra*. The granting or not of a protective order and the extent of protection extended are within the discretion of the trial court, and the court of appeal will not ordinarily modify or reverse the trial court in such matters absent an abuse of the trial court's discretion. *Id.* Thus, the fashioning of a protective order applying to pre-trial discovery is within the broad discretion of the trial court, and is not limited by the particular relief affirmatively requested by the parties.

In this assignment of error, relator also argues that the judge abused his discretion with respect to this paragraph of the September 18, 2020 Order:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that transcripts of depositions, documents produced through discovery requests in this case, and video tapes of depositions are protected and should not be released to the general public. This protection does not restrict the ability of the parties to file legitimate exhibits to pleadings which are needed in the proceedings in this case.

Relator appears to argue in this regard that the Order "essentially sealed" the judges' deposition testimony. We find, however, that this assertion inaccurately characterizes the terms of the Order. The Order does not seal any deposition testimony. In fact, the word "seal" does not appear in any form in the Order. The Order "protects" the transcripts of the depositions and the videotapes of any video depositions, and prohibits their release to members of the "general public" during the discovery phase of this case. Contrary to relator's arguments, merely because the defendant judges are elected officials who are paid with public funds does not allow their discovery responses to be disseminated to the general public at this juncture of the proceeding. Recognizing that there is a fundamental difference between discoverable information and admissible evidence, the Order facilitates an orderly discovery process in this highly newsworthy case, and balances relator's

right to discovery of evidence to support the unstricken allegations in his petition with the rights of every party to a fair trial.[10]

Importantly, this Order only applies to the specific discovery matter of the defendant judges' depositions. The Order does not purport to regulate any aspect of future court hearings or the eventual trial of this matter. By inaccurately characterizing the clear language of the Order, arguing that these matters were sealed when they clearly were not, relator fails to support his claim that the trial court abused its broad discretion in fashioning this part of the Order.

This assignment of error is without no merit.

### THIRD ASSIGNMENT OF ERROR

Next, relator argues that the trial court abused its discretion in ruling that the only persons allowed to attend depositions are those who are "involved in this case and have a legitimate need to be present, such as the attorneys for the parties, their paralegals, and the court reporter."

Herein, relator again argues that because these claims are against elected public officials and a law clerk, all of whom are paid with public funds, this part of the Order somehow violates "society's right to be informed about legitimate subjects of public interest." Relator fails to support this claim, however. As noted above, the scope of this provision of the Order is clearly allowed under La. C.C.P. art. 1426(A)(5). At the hearing, the parties discussed that it is very uncommon for members of the general public to attend discovery depositions in any case. Further, as previously noted, this Order does not apply to future court hearings or the trial of this matter. Relator has failed to show that this portion of the Order is an abuse of the trial court's broad discretion in fashioning protective orders that

---

[10] At the hearing, the newsworthiness of this case in its community and that the parties desire to prevent any further trial of the case in the local media was fully discussed within the context of fashioning an appropriate protective order for the handling of discovery. Further, this part of the Order does not prevent the discovery of "potentially embarrassing" information.

facilitate orderly discovery in this particular case and in helping insure the rights of every party to a fair trial. Accordingly, this assignment of error is also without merit.

**FOURTH ASSIGNMENT OF ERROR**

Finally, relator argues that the trial court abused its discretion in ruling that the personnel file of defendant Ms. Campbell and evidence related to the Fourth Judicial District Court judges' meetings are protected from discovery unless the personnel file or meeting documents contain information related to plaintiff's allegations of Ms. Campbell's destruction of court documents or mishandling of pleadings filed at the Fourth Judicial District Court.

Herein, relator argues that discovery of evidence is broader than the admissibility of evidence, and that discovery statutes are supposed to be "liberally and broadly construed" to afform all parties a fair opportunity to obtain pertinent facts. Relator argues that this portion of the Order allows "defendants themselves" to decide which of those personnel file documents or meeting documents "contain information related to plaintiffs' allegations of Ms. Campbell having destroyed official documents or concerns about her alleged wrong doings in relation to her handling of pleadings filed with the Fourth Judicial District Court." Instead, relator argues, without facts, the Order will allow defendants to thwart discovery of admissible evidence. Relator argues, without authority, that all documents from Ms. Campbell's personnel file should be discoverable, as well as all documents evidencing and relating to the judges' meetings, with the trial court later determining which evidence would be *admissible* at trial.

This section of the Order limited discovery in that no discovery would be allowed related to the subject matter contained in the allegations that have been stricken from relator's petition, and that discovery from Ms. Campbell's personnel file as well as the judges' meetings would be limited to information relevant to

those allegations in relator's petition that have not been stricken. While relator is correct that discovery statutes are to be broadly construed, the discovery articles and jurisprudence do not hold that discovery is unfettered. Courts have established that while relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Dabezies v. Trelo*, 18-0278 (La. App. 4 Cir. 5/23/18), 248 So.3d 498, 501, citing *Indus. Pipe, Inc. v. Plaquemines Parish Council*, 12-1348 (La. App. 4 Cir. 9/14/12), 100 So.3d 896, 901. In other words, relator must still show that discovery may lead to relevant evidence, which is defined by La. C.E. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Against this legal backdrop, relator fails to show, at this time, that the trial court abused its broad discretion in limiting discovery of Ms. Campbell's personnel file and evidence relating to the judges' meetings to evidence relevant only to those allegations that have not been stricken from relator's petition. When and if relator feels aggrieved by any specific discovery response in this regard, relator may seek appropriate legal recourse as provided for in the Code of Civil Procedure. This assignment of error is without merit.

## **DECREE**

For the reasons assigned herein, we find that relator's assignments of error are without merit. The trial court correctly found that La. C.E. art. 519 is applicable with respect to plaintiff's proceeding with the depositions of the defendant judges herein. Further, the terms of the subject Order limiting discovery in other respects and regulating the conduct of discovery in this case as described

21-C-279                                      15

herein are well within the trial court's broad discretion in regulating pretrial

discovery.  Accordingly, this writ application is denied.

**<u>WRIT DENIED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**AUGUST 26, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-C-279

### E-NOTIFIED
4TH JUDICIAL DISTRICT COURT (CLERK)
HON. JEROME J. BARBERA, III (DISTRICT JUDGE)
JOSEPH R. WARD, JR. (RELATOR)          SEDRIC E. BANKS (RELATOR)          LAWRENCE W. PETTIETTE (RESPONDENT)
JUSTIN N. MYERS (RESPONDENT)

### MAILED
JON K. GUICE (RESPONDENT)
ATTORNEY AT LAW
1881 HUDSON CIRCLE
MONROE, LA 71201

HONORABLE JEFFREY M. LANDRY
(RESPONDENT)
ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 NORTH 3RD STREET
6TH FLOOR, LIVINGSTON BUILDING
BATON ROUGE, LA 70802

BRIAN E. CRAWFORD (RESPONDENT)
ATTORNEY AT LAW
POST OFFICE BOX 14600
MONROE, LA 71207-4600